IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**AUTOGERMANA, INC.**,

   Plaintiff,

   v.

**BMW OF NORTH AMERICA, INC.**, *et al.*,

   Defendants.

Civil No. 12-1542 (BJM)

## OPINION AND ORDER

     Autogermana, Inc. brought this diversity action against BMW of North America, Inc. and BMW of North America, LLC (collectively, "BMW NA") under Puerto Rico Law 75 of June 24, 1964, *as amended*, 10 L.P.R.A. § 278, *et seq.* ("Law 75" or the "Act"), alleging impairment of a dealership relationship. Docket No. 49 ("Compl."). Autogermana claims that BMW NA is contractually obligated to reimburse Autogermana for Puerto Rico local sales and use tax ("IVU") levied on parts used in warranty repairs and maintenance services between 2006 and 2010. BMW NA disagrees with Autogermana's interpretation of the operative contracts. Before the court are the parties' cross motions for summary judgment. Docket Nos. 65 ("BMW Mot."), 80 ("Autogermana Mot."). BMW NA filed a consolidated reply and opposition, Docket No. 99, and Autogermana responded, Docket No. 107. For the reasons set out below, BMW NA's motion is **DENIED**, and Autogermana's motion is **DENIED**.

## SUMMARY JUDGMENT STANDARD

     Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material only if it "might affect the outcome of the suit under the governing law," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and "[a] 'genuine' issue is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). The court does not

weigh facts, but instead ascertains whether the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Leary v. Dalton*, 58 F.3d 748, 751 (1st Cir. 1995).

The movant must first "inform[] the district court of the basis for its motion," and identify the record materials "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); R. 56(c)(1). If this threshold is met, the opponent "must do more than simply show that there is some metaphysical doubt as to the material facts" to avoid summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The nonmoving party may not prevail with mere "conclusory allegations, improbable inferences, and unsupported speculation" for any element of the claim. *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990). Still, the court draws inferences and evaluates facts "in the light most favorable to the nonmoving party," *Leary*, 58 F.3d at 751, and the court must not "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon the facts of the record." *Greenburg v. P.R. Maritime Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987).

## BACKGROUND

This summary of the facts is guided by the parties' Local Rule 56 statements of uncontested facts. *See* Docket Nos. 66 ("SUMF"), 81 ("ASMF" starting at 11), 100, 108.[1]

---

[1] Local Rule 56 requires parties at summary judgment to supply brief, numbered statements of facts, supported by citations to admissible evidence. It "relieve[s] the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute," *CMI Capital Market Inv. v. González-Toro*, 520 F.3d 58, 62 (1st Cir. 2008), and prevents litigants from "shift[ing] the burden of organizing the evidence presented in a given case to the district court." *Mariani-Colón v. Dep't of Homeland Sec.*, 511 F.3d 216, 219 (1st Cir. 2007). The rule "permits the district court to treat the moving party's statement of facts as uncontested" when not properly opposed, and litigants ignore it "at their peril." *Id.*

Autogermana, Inc. is a corporation organized under Puerto Rico law, with its principal place of business in San Juan, Puerto Rico. Autogermana is a retail dealer of BMW and Mini brand vehicles, and operates a corresponding service facility for BMW and Mini vehicles.[2] SUMF ¶¶ 1–3. Autogermana's service facility was located in San Juan, Puerto Rico up until April 2008, after which it moved its service center to the municipality of Guaynabo.

BMW of North America, LLC, is a Delaware Limited Liability Corporation. BMW of North America, Inc. was a Delaware corporation that in 2000 converted to BMW of North America, LLC. SUMF ¶¶ 4–5.

*BMW Limited Warranty and Maintenance Program*

New BMW vehicles are sold with a new vehicle limited warranty that protects against defects in materials or workmanship, and a standard maintenance program that covers all factory recommended maintenance for a certain time period. SUMF ¶¶ 49–50. Customers may choose to upgrade their maintenance program, extending the maintenance period beyond that provided under the standard program. SUMF ¶ 51. Under its agreement with BMW NA, Autogermana provides warranty repair and maintenance services to BMW and Mini vehicles, and is reimbursed by BMW NA for costs associated with providing these services. Policies and procedures for submitting reimbursement claims are laid out in BMW NA's Warranty Policy and Procedures Manual ("WPPM"). Docket No. 67-3, at 78.

Autogermana and BMW NA's dealer relationship is governed by a set of documents, the leading document being the BMW NA Car Center Agreement signed in August 2006, and renewed in October 2010. SUMF ¶¶ 29, 39. The 2006 Car Center Agreement incorporates other documents, e.g. "policies, procedures, programs, and guidelines" issued by BMW NA, and is subject to an addendum titled "BMW of North

---

[2] Although the case involves parts used in repairs of both BMW and Mini vehicles, for the sake of brevity, the court will refer to BMW only.

America, LLC Car Center Agreement Standard Provisions" ("2006 CASP"). SUMF ¶¶ 31, 33. Paragraph 11 of the 2006 CASP provides that provisions in the "Warranty Policies and Procedures Manual supplied by BMW NA" apply to all warranty claims submitted. SUMF ¶ 38. "Strict adherence to the procedures established for processing warranty claims is necessary," and BMW NA is not obligated to process warranty claims "not made strictly in accordance with such procedures and in a timely manner." *Id.* The 2010 Car Center Agreement is subject to a 2010 CASP that is identical to the 2006 CASP for purposes of this case. SUMF ¶¶ 43–48.

### *Reimbursement under the BMW Limited Warranty*

Section 5 of the WPPM outlines the policies and procedures regarding claims made under BMW's limited warranty. SUMF ¶¶ 53, 58. The subsection titled "Reimbursement Policies" provides that dealers will be reimbursed for spare parts used "at the net price in effect on the date of repair." In addition, dealers receive a handling charge equal to 40% of the net price of the part. Docket No. 67-3, at 161–62. The same subsection states:

> Reason for Policies: 1. To allow BMW centers to recover the reasonable and justified costs associated with warranty repairs.

There is no separate defect code within the BMW NA dealer communication system for claiming reimbursement of sales taxes on parts under the limited warranty. SUMF ¶¶ 57, 62. Within Section 5, under "Time Limit Policies," dealers are required to submit warranty claims within 30 days of completion of a repair order. SUMF ¶¶ 63, 65. The same subsection provides procedures for late claim submissions. ASMF ¶ 42. The dealership service manager must submit a letter of explanation to the BMW Aftersales Market Manager ("AMM") containing details of the late claims and an explanation for the delay. If the AMM recommends waiver of the 30-day time limit, the warranty team "will reply in writing to the service manager's request indicating it has been accepted, modified, or denied." Docket Nos. 67-3, at 172; 67-4, at 91.

*Reimbursement under the BMW Standard Maintenance Program*

Section 9 of the WPPM contains a subsection titled "BMW Maintenance Program," which lays out the policies and procedures for claims related to the standard maintenance program. SUMF ¶¶ 55, 60. That subsection provides:

> The following items are eligible for reimbursement under the Maintenance Program:
>
> - . . .
>
> - All sales or other applicable taxes on the actual repair, parts, or maintenance services under this agreement . . . are the responsibility of BMW of North America.

Docket No. 67-3, at 216–17. The 2006 WPPM also provides that claims under the standard maintenance program should be submitted within 30 days. *Id.* at 216. But in the 2010 WPPM, Section 9 states that claims under the maintenance program must be submitted within the "required submission time limit." Docket No. 67-4, at 132.

*Puerto Rico Sales and Use Tax*

In 2006, the Puerto Rico Legislature enacted a sales and use tax (commonly known as "IVU") of 5.5% for the Commonwealth of Puerto Rico, and 1.5% for its municipalities. The IVU went into effect on November 16, 2006. The IVU tax was adjusted to 6% for the Commonwealth and 1% for the municipalities, effective August 1, 2007. SUMF ¶¶ 6–7.

Since the inception of the IVU, Autogermana has held a "Certificate of Exemption" from the Puerto Rico Department of Treasury, declaring its capacity as a reseller of vehicle parts. ASMF ¶ 1. Autogermana was under the impression that the certificate exempted parts used in vehicle warranty and maintenance services from IVU. ASMF ¶ 2. However, starting in 2010, the Treasury Department indicated that parts used in warranty repair and maintenance services are subject to IVU. By September 2010, Autogermana began to pay IVU on spare parts used in repairs after that date. SUMF ¶ 68. Around the same time, BMW NA decided to begin to reimburse Autogermana for

IVU paid on parts prospectively. SUMF ¶¶ 69–70. On October 1, 2010, Autogermana started submitting reimbursement claims for IVU on parts, and BMW NA has paid those claims. SUMF ¶¶ 71–72.

In early 2011, Treasury initiated efforts to collect IVU on vehicle parts used in repairs between 2006 and 2010. SUMF ¶ 73. In April 2011, Donald Guerrero, Vice President and General Manager of Autogermana, wrote to BMW NA executives informing them of this development. *Id.* On June 30, Autogermana entered into a Closing Agreement with the Treasury Department, to retroactively pay IVU for parts used in warranty and maintenance services between November 2006 to August 2010. SUMF ¶¶ 11, 16–19. Under the agreement, Autogermana paid $728,899.00. SUMF ¶ 21. More than a year later, in August 2012, Autogermana reached a similar agreement with the municipality of San Juan for IVU due to the municipality. SUMF ¶ 24. Autogermana paid $74,282.25 to San Juan. SUMF ¶ 26. It has not yet reached a similar agreement with the municipality of Guaynabo. SUMF ¶ 28. After extensive discussions between the parties, in August 2011, BMW NA officially refused to reimburse Autogermana for the payments made under the closing agreements. SUMF ¶ 74.

Autogermana filed this action in July 2012. The amended complaint asserts two causes of action: (1) impairment of a dealer relationship under Law 75, and (2) bad faith breach of contract. Compl. ¶¶ 99–112.

## DISCUSSION

Autogermana seeks summary judgment as to liability under Law 75, and requests a jury trial for the determination of damages.[3] Autogermana Mot. 35. BMW NA argues that it is entitled to summary judgment because it is not contractually obligated to

---

[3] BMW NA asserts that Autogermana's second cause of action, bad faith breach of contract, is subsumed within its Law 75 claim. BMW Mot. 4. Autogermana does not dispute this characterization of its claims, and therefore I will proceed on the assumption that the two causes of action are but one.

reimburse Autogermana for taxes paid on warranty parts, and any claims for reimbursement on warranty parts or under the standard maintenance program are contractually time-barred.[4]  BMW Mot. 4–5.

Law 75 was enacted to protect Puerto Rico distributors from arbitrary terminations and impairment of dealership relationships with the principal.  *See Triangle Trading Co., Inc. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999).  In particular, Law 75 provides that "no principal or grantor may directly or indirectly perform any act detrimental to the established relationship . . . except for just cause."  10 L.P.R.A. § 278a.  To establish a claim under Law 75, a plaintiff must show that a "contract existing between the parties was impaired or terminated without just cause and that there were resulting damages."  *Irvine v. Murad Skin Research Labs., Inc.*, 194 F.3d 313, 320 (1st Cir. 1999) (internal quotations omitted).  The Act, moreover, only protects a dealer's contractually acquired rights—where "a dealer's contractually acquired rights have not been impaired in any way, Law 75 does not come into play."  *Vulcan Tools of P.R. v. Makita U.S.A., Inc.*, 23 F.3d 564, 569 (1st Cir. 1994).  Thus, the resolution of this Law 75 claim turns on whether BMW NA's refusal to reimburse Autogermana impaired its "contractually acquired rights" under Puerto Rico law.[5]

Under Puerto Rico law, "obligations arising from contracts have legal force between the contracting parties, and must be fulfilled in accordance with their stipulations." 31 L.P.R.A. § 2994.  The Civil Code's parol evidence rule bars extrinsic

---

[4] BMW NA concedes that IVU on parts used under the maintenance program are eligible for reimbursement under the contract.  BMW Mot. 2.

[5] The court notes that both the 2006 and 2010 CASP contain a choice of law provision specifying that the contract shall be governed and construed in accordance with New Jersey law. *See, e.g.*, Docket No. 67-8, at 63.  However, this choice of law clause is unenforceable because Law 75 provides that choice of law clauses in distribution agreements with Puerto Rico dealers are contrary to public policy and invalid.  *See* 10 L.P.R.A. § 278b–2.  Because Puerto Rico holds the dominant contacts to the contract at issue, Puerto Rico law applies to the instant contract dispute.  *See Allstate Ins. Co. v. Occidental Int'l, Inc.*, 140 F.3d 1, 3 (1st Cir. 1998) (noting Puerto Rico applies the "dominant or significant contacts" test in contract actions).

evidence to alter or modify the clear terms of a written agreement. *Vulcan Tools*, 23 F.3d at 567; 31 L.P.R.A. § 3471 ("If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed."). Contract terms are clear when they are "lucid enough to be understood in one sense alone, without leaving any room for doubt, controversies or difference of interpretation." *Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey P'ship, S.E.*, 615 F.3d 45, 53 (1st Cir. 2010). However, where a contract is ambiguous or silent on an issue, the intent of the parties at the time of contracting controls. *Borschow Hosp. & Med. Supplies, Inc. v. Cesar Castillo Inc.*, 96 F.3d 10, 16 (1st Cir. 1996); *Marina Indus., Inc. v. Brown Boveri Corp.*, 14 P.R. Offic. Trans. 86, 94–95 (1983). Determination of the parties' intentions requires an examination of all circumstances surrounding the contract's execution. *Marina Indus.*, 14 P.R. Offic. Trans. at 95. When a contract dispute centers on the intent of the parties, summary judgment is disfavored, but not precluded. *Lohnes v. Level 3 Commc'ns, Inc.*, 272 F.3d 49, 53 (1st Cir. 2001). Summary judgment is appropriate when evidence of the parties' intentions is "so one-sided that no reasonable person could decide the contrary." *Id.* (internal quotation omitted).

Applying these principles to the contracts at issue, I find that Autogermana has demonstrated a genuine issue of material fact as to whether the parties intended for IVU on warranty parts to be eligible for reimbursement. Similarly, there is a genuine issue as to whether the reimbursement claims are contractually time-barred. I will first address the parties' arguments regarding reimbursement under the limited warranty, and then turn to BMW NA's timeliness argument.

**I.     Reimbursement Eligibility under the Limited Warranty**

BMW NA argues that because Section 5 of the WPPM is silent with regard to reimbursement of taxes, they have no obligation to reimburse Autogermana for IVU levied on warranty parts. BMW Mot. 11. Autogermana asserts that BMW NA is contractually obligated to reimburse dealers for taxes on parts, because the

reimbursement policy is intended to allow dealers to recover "the reasonable and justified cost associated with warranty repairs." Autogermana Mot. 7.

In support of its argument, BMW NA cites the interpretive maxim of *expressio unius exclusio alterius*, which provides that "when parties list specific items in a document, any item not so listed is typically thought to be excluded." *Smart v. Gillette Co. Long-Term Disability Plan*, 70 F.3d 173, 179 (1st Cir. 1995). The maxim, while useful in many contexts, does not apply where the document indicates otherwise. *Id.* (noting that the maxim applies in part because "there is absolutely nothing in the agreement's text that hints at some additional item lurking beyond the enumerated list"). The document, read as a whole, does not support application of the maxim. First, unlike the list in Section 9 of the WPPM, the reimbursement policy in Section 5 is not framed as an exhaustive list of items eligible for reimbursement. The subsection is not qualified by an introduction; rather, it simply details the various policies applicable to different reimbursable categories, e.g. labor, parts, sublet, handling charges. Docket No. 67-3, 161–62. More importantly, the "Reason for Policies" at the end of the subsection expressly states that reimbursement policies are intended to allow dealers "to recover the reasonable and justified cost associated with warranty repairs." *Id.* at 163. While the policy does not explicitly provide for reimbursement of taxes associated with warranty parts, this statement of purpose suggests that other "reasonable and justified" costs, including IVU, may be eligible for reimbursement.

The question then, is whether IVU taxes constitute a "reasonable and justified" cost eligible for reimbursement. The text of the contract offers little guidance. In the absence of clear and unambiguous terms, the scope of a contract must be determined in accordance with the parties' intentions, taking into account the parties' acts prior, contemporaneous, and subsequent to the contract's execution. *Marina Indus.*, 14 P.R. Offic. Trans. at 95; 31 L.P.R.A. § 3472. In short, the trier must consider all the circumstances surrounding the contract. *Marina Indus.*, 14 P.R. Offic. Trans. at 95.

Here, certain facts weigh in favor of Autogermana's interpretation: Section 5 of the WPPM explicitly states that the reimbursement policies are intended to make dealers whole, that is, to allow recovery of reasonable and justified costs. And BMW NA's conduct subsequent to contract execution appears to reflect such an intention—in September 2010, BMW NA made a "business decision" to prospectively reimburse Autogermana for IVU on parts used in warranty repairs. SUMF ¶¶ 69–70. Internal communications between BMW NA executives also indicate a belief that IVU constitutes a "reasonable and justified" cost. Autogermana Mot. 3.

At the same time, it is possible that the parties never contemplated IVU taxes should be a reimbursable expense. As BMW NA points out, Autogermana receives a 40% handling charge for parts used in warranty repairs. The handling charge could be seen as the appropriate means for Autogermana to recover reasonable and justified costs, such as IVU. Additionally, the BMW dealer communication system contains no defect code for claiming sales taxes on warranty repair parts. Finally, the fact that Section 9 of the WPPM (relating to the maintenance program) contemplates reimbursement of sales and applicable taxes on parts, yet Section 5 is completely silent on taxes, supports a finding that the parties did not intend for applicable sales taxes under the limited warranty to be reimbursable. In short, there is a genuine issue of material fact at this stage that precludes summary judgment on the issue.

In a last ditch effort, Autogermana also contends that the language in Section 9 of the WPPM, authorizing reimbursement of "all sales or applicable taxes . . . under this agreement" applies not only to taxes under the standard maintenance program but extends to IVU on warranty parts. But as BMW NA rightly points out, this sentence in Section 9 is qualified by an introductory clause which states that that items listed below are eligible for reimbursement as "under the Maintenance Program." Reading that section as a whole, the reimbursement policy outlined in Section 9, subsection BMW Maintenance

Program (Docket No. 67-3, at 216), unambiguously applies solely to claims and parts serviced pursuant to BMW's maintenance program.

## II.　　Timeliness of IVU Reimbursement Claims

BMW NA next asserts that Autogermana's failure to submit IVU reimbursement requests within 30 days from repair or service relieves it of any contractual obligation to reimburse the dealer for those costs. BMW Mot. 13–14. Autogermana counters that the time limits policies cited are not applicable, and in the alternative, BMW NA waived the 30-day deadline. Autogermana Mot. 21. Because the contracts' time limit policies are ambiguous, summary judgment on this issue is denied.

The time limit policies in Section 5 require that dealers submit warranty claims within 30 days "from the date of the last time punch on the repair order." Similarly, Section 9 of the 2006 WPPM states that claims under the maintenance program must be submitted within 30 days, but does not specify when the 30-day deadline starts to run.[6] Autogermana asserts that the reference to "the last time punch on the repair order" in Section 5 indicates the time limit applies only to "tangible acts such as the substitution of a part" or labor related to the repair, and not intangibles such as taxes. Autogermana Mot. 21–22. In any event, Autogermana claims that it has complied with the time limit policies by submitting warranty and maintenance claims in a timely manner between 2006 and 2010. I find that it is unclear whether the time limit requirements outlined above apply to the IVU reimbursement claims at issue. First, because Autogermana did not pay IVU on parts between 2006 and 2010, it would have been impossible for Autogermana to comply with the time limit policies stated above. Moreover, Section 9 of the WPPM is unclear as to when the 30-day deadline begins to run. A reasonable interpretation of that provision may be that dealers must submit maintenance claims

---

[6] Section 9 of the 2010 WPPM merely states that maintenance program claims must be submitted "within the required submission time limit." Docket No. 67-4, at 132. Without more, I assume, without deciding, that the required submission time limit referred to here is 30 days.

within 30 days of actually incurring the expense.  Here, Autogermana did not incur any IVU expenses for parts used between 2006 and 2010 until it signed the closing agreement with Puerto Rico's Treasury Department in June 2011.  By then, it had already notified BMW NA executives of its intent to be reimbursed.  The terms of a contract should be read as a whole, and conflicts must be read to harmonize and serve the intent of the parties.  *Carrillo Norat v. Camejo*, 7 P.R. Offic. Trans. 144, 149 (1978); *see also Wells Real Estate*, 615 F.3d at 54.  Given that the reimbursement policies are intended to allow dealers to recover the "reasonable and justified" costs associated with warranty repairs, and the maintenance program explicitly provides for reimbursement of applicable taxes on parts, a reasonable jury could find that the 30-day deadline is inapplicable to Autogermana's 2006 through 2010 IVU claims.

## CONCLUSION

In sum, the reimbursement policy for taxes on warranty parts, and the applicability of the time limit policies to Autogermana's reimbursement claims remain genuine questions of fact disputed by the parties.  Resolution of these questions are best left to the trier of fact at trial, who can assess the credibility of witnesses, weigh competing evidence, and draw legitimate inferences from the facts presented.  *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Thus, both sides' motions for summary judgment are **DENIED**.

**IT IS SO ORDERED.**
In San Juan, Puerto Rico, this 23rd day of May, 2014.

*S/ Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge